I have previously reserved five minutes for rebuttal. This is a duty to defend case, and thus I will spend my time this morning on that issue. Seplast supplied a roof to the Cardinal Spelman High School in the Bronx, New York. The Archdiocese, who owns the school, sued Seplast when the roof leaked, needed to be replaced, and caused interior damage. Seplast sought a defense, sought the duty to defend, which was denied by the insurance company and ultimately by the district court. The following facts are not disputed on the record. There is no dispute that there are numerous allegations in the underlying complaint, meaning the complaint in the Bronx, of damage to the interior walls and ceilings of the high school. Paragraphs 15, 16, 17, 21, 27, 42, all say that there was damage to the interior walls and ceilings of the high school. Now 39 is the cross-incorporation paragraph, right? We incorporate all. Correct. I didn't cite that as... Yeah, but so no, I'm curious about 42. Can you read just 42 aloud to me, if you have it right there? Because of course, you know what they're saying about your incorporation, it's boilerplate, it's background, it's... Correct. And I'm sure you'll get to that, but 42 wouldn't be in that realm. Could you talk about the tiles and throughout? 42 is Seplast has ignored the plaintiff's request for repairs and or replacement of the roof and refuses to acknowledge its obligation to correct these issues. So that is just the roof. That's not other property. No, repairs, repairs. I don't see any reason why, and I will say, for example, there is a talk about remediation and replacement. I would offer that replacement is the roof, remediation is the interior walls and ceilings. The complaint is about property damage. That's what it is about. And the roof is one issue and the ceilings and the walls are another issue. I don't know. The case is still going on in the Bronx. It could be, even though the roof is an expensive issue, it could be over time when they do, into it that the damage to the roofs and the ceilings are extensive. I think they are extensive, but they'll find out they're trying to not use roof because that would be guard. You're working. I'm sorry. Ceilings. I'm sorry. So we're talking about tiles. That's pretty. We're talking about tile, seal, sealing tiles, interior damage. That's what I would say. The roof is on the exterior. The roof leaked and it caused damage to the walls. It caused damage to the ceilings in the high school. There's no dispute that the alleged damage to the interior wall, there's no real dispute that the alleged damage to the interior walls and ceilings of the high school were caused by the roof leaks. And third, there is no real dispute that the damage to the interior ceilings and walls constitute property damage under Lamar. Matter of fact, the district court acknowledged that. The district court said, you have an occurrence, you have property damage which would be covered, and then the district court said, but that's not the end of the inquiry. This policy, like all CGL policies, like almost every policy, if not every policy that was cited by both sides, provides duty to defend against any suit seeking property damage. It is the rule in Texas, it has always been the rule in Texas and this circuit, that we look to the allegations, not to the cause of action. Under Texas law, there's a duty to defend, Zurich versus Nokia, where potentially includes a covered claim. Under Texas law, there's a duty to defend, building specialties with the allegations could state a claim covered by the insurance policy. Seeking cannot mean, and it has never meant, that there has to be a cause of action. Colony versus Customs says the focus is on the allegations, not the theories. The language in those cases is, alleges and seeks damages for, right? Well, it's yes, but we're talking about the policy language, and the policy says seeking. And all these, there is no Texas law, or any court, which has a separate rule of seeking, meaning they're interpreting what the policy means by seeking. And when you have the duty to defend, what you have to be looking at is the allegations. So where do you think, if it's this powerful, where did the district court misunderstand? It seems to me the district court thought this is roof, roof, roof, roof, and the damages articulated are the exact price of the roof, so it's just the roof. Is that basically what happened? I agree, and I would say the following. And the other thing I think that the district court got wrong was that seeking can't mean, we know from the cases, doesn't mean specific mention of legal basis, and there is no magic words. It's not that you have to ask nicely. And the reason is, is because the underlying complaint is always written by someone other than you. The policyholder is at the beck and call of the underlying plaintiff. And GL policies are litigation insurance. And I won't quote all the cases that the insurance company cited, but in all of them, they say look to the factual allegations, don't look to the causes of action, look to what this is about. But counsel, I mean, looking to the factual allegations, where you've got two different defendants, I mean, I know we don't look at the cause of action, but one of them is against CYPLEST. But when you look at the allegations, I mean, it's specific to VEMA, and they're specific to CYPLEST. And what I see is, back to Judge Higginson's point, it's roof, roof, roof. It is talking about the roof, but again, Judge, you look at the allegations, and the allegations But where do the allegations say something about damage to the walls, damage to the ceilings, damage to the structure? About CYPLEST, is distinct from VEMA. No, I think it's particularly, I mean, first of all, 16 says the school, 15, the observed water damage in the ceiling throughout the premises. Representative plaintiffs then notified VEMA and CYPLEST of the water damage. During the work performed, this is 17, during the work performed, CYPLEST designated contracts continue to suffer from additional leaks and water damage. Both VEMA and CYPLEST were notified of these leaks and change. Number 21. There was no contract between your client CYPLEST and the Archdiocese, right? That's correct. That's correct. I mean, I don't think it matters. Well, it could matter on the contractual liability. It doesn't matter. And I'll tell you why. I don't mean to jump off notes. Well, let me just give you one more. Number 21. On March 24, 2017, the scheduled site visit, VEMA advised the plaintiffs that despite the existence of the VEMA warranty, the leaks and damage created, the leaks and any damage created thereby were the sole responsibility of CYPLEST. It's all there. And what counsel is going to say, and Judge, you pointed out a little bit, is, well, there was a guarantee, or there was a contract here, the guarantee, gave it, talk about this, I'm This is not from me. This is from counsel. But Lamar already talked about that. Lamar says specifically, specifically says, what do you look for when you're looking for the duty to offend? You look for an occurrence which causes property damage. And what Lamar says, I guess you might say, though, the only occurrence implicating the No, no, the occurrence, no, occurrence is, the occurrence is the damage, right, the leak. That's the occurrence. Property damage is the ceiling and walls. I guess what we're asking, maybe, or I'm asking is, is the complaint open to the possibility that it was only how the wall, the roof was installed, VEMA's problem, not the roof itself? Maybe. No suggestion of that in the complaint. No, but Lamar says the label attached to a cause of action, whether it be tort, contract, or warranty, doesn't determine the duties under insurance contract. It's the same thing that happened there. What they say, what the plaintiff says, you don't look at. Again, you look at the factual allegations. If they would say, hey, look, the roof caused this. We have all these, we have allegations of ceiling damage. We have deal of wall damage. It's possible. You know, by the way, who would be the most surprised that they weren't seeking damages for the walls and ceilings? The Archdiocese. I think they would be shocked to know that they weren't seeking those damages. This is not a class action where somebody, like in a bodily injury case, where they specifically say, we're not seeking this. You know, they opt out for commonality or something like this. There is no evidence at all in, under the New York pleading that they weren't seeking these damages. I think they're very much at play. And ultimately, and I would say something else about the warranty, ultimately, maybe the insurance company is right. Maybe this is a defense in the Bronx to damages. But it's not a defense to the duty to defend. Ultimately, he'll bring this up in the Bronx and he'll show it to the judge. He'll show it to the jury and says, look, we're limited. But that's not what you look at. This is an eight-corner state. Texas is an eight-corner state. In the cases, for example, like building specialties, right? Building specialties, which is relied upon by the insurance company. Building specialties, and we provided the court with the underlying complaint in building specialties. So you could see there, there was pipes. And what happened was there was floor damage. The underlying complaint never mentions floor damage. It never mentions floors. It doesn't mention anything. What happened there was that they tried to get an affidavit in later and said, oh, no, no, we're also seeking that. And that's outside the eight corners. What about the cases maybe closer is the Northern District of Texas Stotts case? You remember that one? Yeah, of course. Now, Stotts, quote, Stotts did not allege any type of bodily injury as defined in the policy. They didn't have bodily injury. There, and I'll use a term that the Stotts court used, was there, it was a worker's comp claim. And the basic thrust was worker's comp. If you want to use, I don't know if there's a rule in Texas. But there were fact allegations about bodily injury. Correct. But the court said the basic, that was a worker's comp case. It was there, the, by the way, there, the court said there was no bodily injury. There was no occurrence. There was an employment exclusion. They didn't even get to that. There was no occurrence. But if you're going to use, I don't think it's a rule in Texas, but if you want to use the basic thrust case, you know, rule, the basic thrust of this case is that they're seeking damages to the building, the roof, ceiling, and walls. There was, let's say you're right on this point. Do you want to save a little time for the contractual exclusion, which the district court never reached? The district court never reached it. And I think this court shouldn't reach that as well. But generally, generally when you talk about that, the contractual exclusion applies when that is the sole basis for liability, right? Here you have an occurrence. You have property damage. The sole basis for liability is not just a contract of the warranty. It's the same thing as in Lamar, where you have, you don't look only to that. That doesn't exclude coverage. If you have a contract with someone to paint your house, right? You have a contractual obligation, you have a contractual, but if they do something else like fall through your floor, that's not a contract claim. That's a negligence claim. So here too, again, the district court didn't deny on that basis, but I don't think that you get to there. Here, when you read the complaint, when you read the underlying complaint, the law in the circuit has always been to give the benefit of doubt, read it in the broadest possible way. Here, the district court read it in the narrowest way. The allegations against CPLAS are what matters. The underlying complaint certainly and reasonably could be read as seeking damages against CPLAS, covered property damage. The court made a radical departure. This is a radical departure from duty to defend law in the Fifth Circuit, duty to defend law in Texas. The circuit has long held, St. Paul versus Greentree, that there's coverage where there are factual allegations that support a cause of action that was not even pledged specifically. And as this court, and I'll end with this, as this court in Landry said a couple of months ago, if any allegation in the complaint is even potentially covered by the policy, then the insurer has the duty to defend. And Landry concluded by saying, we must focus on the facts alleged in the complaint and the actual legal theories, rather than the actual legal theories invoked. There are more than ample allegations of covered property damage, and again, the district court agreed that there was covered property damage here and allegations. And therefore, Your Honor, we ask that you reverse the district court and find that there is a duty to defend. Thank you, counsel. You have saved time for rebuttal. I did save time. Yeah. Mr. Cain. Good morning, and may it please the court. Thank you so much for being here this morning. Judge King, welcome home. I don't know if you still consider Houston your home.  Yes, I do. Welcome back to the home of the second place Astros and the last place Texans. Thank you for being here. I'm especially glad you're here for two reasons. One of which is, I really am still at this stage in my career, I'm still almost, I'm kind of awestruck and I'm thrilled that I can be a part of a legal system where when we have differences of opinion about how to read a policy and how the law applies, we don't settle it with dueling pistols or a fight outside the barn. We come in here and we decide these things civilly, amicably, professionally. I have enjoyed working with Steve. He's a great attorney. I'm thankful that we can be here and we can resolve these issues and talk about what the law is. And so thank you. And the second reason why I'm thankful is because I had to walk all of two blocks this morning, Judge King, to get here from my office. And so I know you guys came from a much greater distance. Thank you, judges, for being here and for listening to this case. Let me talk about, first of all, the legal standard. Because as I'm reading their brief, both the appellant brief and the reply brief, the only thing that I see is a comment about that there's coverage when the suit contains allegations that if true, assert a claim covered under the policy. And there are a number of cases that say that and they cite to those and they're correct on that. But what is missing in their analysis and all their briefing that they don't address and don't recognize and don't recognize in the reply brief, even after we've pointed it out in our brief, is that there's law from, and we cite it from the Fifth Circuit, from the Texas Supreme Court, from federal district courts, from Texas appellate intermediate courts, that the law is that there's a duty to defend when the underlying lawsuit alleges and seeks damages for an event potentially covered by the policy. And then in addition to that, there are a number of cases that also talk about how that, and I know that I'm misspeaking here, but I'm just using this language to make this as efficient as possible, that there's sort of a, there's a causation element aspect to this, that you must allege that the damages being sought were caused by a covered event. For instance, the building specialties case that we cite in our brief says it's not enough that the party suing the insured has incurred property damage, that damages being sought must be because of that property damage. And so that's what's missing here. One of several things, but that's what is missing here is, it's one thing to say, okay, I see some damage in the ceiling tiles here, okay? That doesn't create coverage. What you have to do is, first of all, you have to allege and seek damages for those, and then you have to show that that was caused by something that's covered. For instance, there's nothing here that says the leaks in the roof came in. And first, let me just stop before I even get to that. In the argument that I heard today for the first time, I'm hearing about now that there's damage to the walls and the ceilings, and I'm assuming that ceilings means roofs. I think we may have clarified that, but I'm hearing for the first time that there's damage to the walls. I don't see that in the petition. The word they do use is tiles. Okay. Tiles. And then throughout. Tiles throughout the building. Yes. Yes. Well, and it also says the leaks and the damage caused thereby. I mean, counsel walked us through the paragraphs of the complaint that clearly reference something beyond the leaky roof itself, right? Well, let's look at the specific paragraphs that they say you find the damages in this case. That's paragraphs 15, 16, 17, and 21 of the underlying complaint. So here's what you have in paragraph 15. It says in November 2016, officials at the school observed water damage in the ceiling tiles throughout the premises after a rainstorm. Now here's the problem with that. Going back to this language that we talked about where courts say that it's not enough to just say there's property damage. You have to show that the damage sought must be because of that property damage. So there's nothing in here that says, well, the roof and leaks in the roof cause this damage, whether it's the ceilings or the tile or whatever it is. There's nothing in here that links these two together. Now they've tried to. But does it have to connect the dots? Yes, it does. There has to be something there. Generally speaking, if my if my ceilings leak in the first place I'm going to look is the roof, right? That's certainly a possibility. There's a number of other things that could cause it. But just because you said there's a leak in the roof doesn't mean or that there's there's damage to the ceiling tiles doesn't mean that you're saying, OK, and there was a there's a roof leak and that's excluded under the your product, your work exclusion. But that's what caused the leaks in the or not the leaks, but the damage to the ceiling tiles itself. You have to show there there has to be some kind of connection. And here's how they try to do that in their brief. They say, well, that connection is in the petition, in the underlying complaint. And what they say in their brief at pages six and seven, they say the underlying complaint alleges and here's the quote, defects in the roof membrane system and flashing, end quote, were the cause of the leaks and water damage to the school property. Now, if that's in the underlying complaint, then I think that they've got that causative element there. But the problem is, if you go and you look at where they cite to, which is paragraphs forty one through forty five, you do find that quoted language, which is defects in the roof membrane system and flashing. And then everything else after that, where they say is what caused the damage inside the school. That's nowhere found in paragraphs forty one through forty four or anywhere in the underlying complaint. So so your argument now, an oral argument, isn't so much that the sort of pivot of paragraph thirty nine shouldn't operate. It's just background. It's boilerplate. You're acknowledging they do make the allegation of other property damage. But to us, you're saying what they didn't allege was the cause of the connection. Well, I'm alleging that just mentioning that in one section and not drawing any connection, not saying that we're seeking damages for this, because in fact, when you are also trying to be, are you agreeing that the multiple paragraph references to tiles and ceilings and throughout is work that is not theirs? In other words, there is an allegation of damage to other property. But now the argument is just they didn't allege that it connected to the roof defect. Well, I'm not conceding that there's an allegation that there was damage to other property. I'm saying they do what the court in building specialty says. It's not enough just to say that the insured has incurred property damage. You can't just say there's property damage here. And so that's covered. You have to show that it's covered somehow. And so just the fact that you mention it in the factual background section and I'll talk about some cases that talk about that kind of issue, that scenario. We've cited them in our brief and I'll get to those in just a second. But just because you mention a fact and then don't ever tie it to a specific cause of action or to the damages being sought, both of which you have to have for there to be coverage or at least potential coverage for the duty to defend, that that's not enough. There's also the issue of you have to draw this link to show that it's caused. Now they do in their petition, though, I'll admit they do in their petition say that there's a causation aspect to their petition. It's in paragraph 43 after they've talked about in paragraphs 25 through 27, they've talked about the problem with the roof and the roof has to be replaced. The roof in total has to be replaced. The failed membrane system has to be replaced with a new one. They say it's going to cost in paragraph 27, it's going to cost five, approximately five million dollars. If they'd said just five million, they wouldn't be seeking damages for other property. But it isn't approximately, it's in excess of. They say in excess later in the underlying complaint. That's correct. Yes, they do say that. So we're looking at do they allege it and do they seek damages, it being other property damage. Those two seem to be met, but you can push back on me if you don't agree. I think that's a fair question. And let me answer it this way. In excess, not my favorite band from the 80s, but in excess, what does that do in terms of coverage? They could have said in excess of five million. They could have said in excess of ten million. I still need to know, there has to be something that says what is the in excess composed of. And that was the problem with, that we pointed out with the Clemens case that we cite and another case from the 14th Court of Appeals that talked about the issue of, and I know this isn't directly on point, but they talked about the issue of boilerplate language, generic boilerplate language, which in that case happened to be a Mother Hubbard cause which talked about just other relief. And they said you can't just say other relief and that therefore brings into its ambit something that might be covered. You have to be specific in saying what is it that's covered. And that's the same problem I have here with in excess. In excess is referring to what? Because you are very specific in paragraph 43 where they have that causative language that says as a result of SIP-LAS material breaches of the SIP-LAS guarantee. So here's the connection. And the connection is, as a result of that, the plaintiffs will be forced to replace the roof well in advance of the 20 year plus expected useful term at a cost of approximately five million dollars. There's the connection. But there's no connection to what they point to in paragraphs 15, 16, 17, and 21, which in three of those paragraphs, they just talk about damages. So what damages are you referring to? The only one that actually does refer to something that we can see this distinct from because those damages may be the roof. The only thing that's specific is they say there's water damage in the ceiling tiles. So where in here do you say that not providing for and correcting the ceiling tiles isn't covered? Now, all along, I've had this question, this problem in my mind. I appreciate opposing counsel bringing it up. And that's this little green sheet that I've printed out for you all, in part because it's absolutely awful to try and read. This is the guarantee agreement. This is the basis of the lawsuit. It's blurry. It's fine print. And it's a headache. Fortunately, I could blow it up real big on my PDF and I could decipher that. And so here's the language that I'm wanting to point out. And here's the reason why. All along, I've been asking myself the question and I've literally asked myself, I've asked my client, I've asked opposing counsel and other co-counsel, why don't they just in New York, why don't they just amend the pleading and say we're seeking damages for the tiles? And wouldn't that be a quick and easy fix? And everyone's giving me the same answer. I don't know. Well, OK, I don't either. But this may be a very plausible reason why. Because this says SIP-LAS shall be liable only for the cost of repair of such existing roof membrane system. And then it goes on to say it is not liable for damages to things like the building or the contents or for consequential damages. Now, again, I don't think this is dispositive of any of the issues we have here, but I think it explains the issue why we've got the complaint that we have and we can't speculate about how they might be able to fix it. And I think they could easily fix it. I think the reason your counsel sort of agrees, right, he says that they've been hauled into court and they just need to show this to that court. But there's still they need someone to pay for their defense. Correct. Well, counsel, I'm sorry. And the question is, is there a duty to defend regardless of whether it's easy to fix or not? And I do I do think it's an easy fix. I think you should go to the court and say, for summary judgment there, you know, anything outside the roof, you know, we're moving for summary judgment on that. And then there's there's all that's left is the roof itself. And there's that issue. But that notwithstanding, whether it's an easy fix or not, the question is, have they pled properly in the underlying complaints such that they show that they're alleging and seeking damages tied to a cause of action in which they demonstrate that those are caused by some covered event? What I'm saying is missing here. And this is not creating new law. I think this consistent with what we've seen in other cases is that there has to be some language in here that says the ceiling tiles that are mentioned in paragraph 15 observed water damage in the ceiling tiles. OK, so you're saying that there's some damage in the ceiling tiles. You don't say where it comes from. You don't say what caused it. Now, you do later on talk about what caused the damage. And you say what resulted in that damage. It was the roof and its replacement of the roof is approximately five million dollars. There's nothing. You can't just say I've got a spot on my rug. I've got a broken ceiling tile over here. I've got a doorknob that doesn't fix. And there was a rainstorm. So it's all covered. Well, if you're going to claim that the rainstorm came through the roof and the roof membrane that was defective because SIP-LAS didn't put out a good product and then it caused the spot in the carpet and it caused the break in the tile and it caused somehow the doorknob to stop working. If that's the case, you have to say that in your petition and say it caused that just like they did with regard to the roof membrane where they did say it was caused. That's the same thing that we pointed out in the Wilshire case. They cite the Wilshire case and say, well, there's a case where they found that there was no coverage and or I'm sorry, there was coverage. Spot in the carpet would, you know, below a toilet, fine, or underneath the AC condenser unit. Yes. But if you say throughout, water damage throughout, what else is it other than the roof? I don't know. I don't have to speculate. And if I did speculate, I'd be doing what you specifically told me not to do. Because last year, Judge Higginson, you authored the, what is this, the waste management case. It said the court should not look outside the pleadings or imagine factual scenarios which might trigger coverage. And so I can't imagine. That's just the eight corners rule. Right. And you're just telling us they didn't have the causative tissue. In 43, you're saying they limited the causative aspect to the roof. That's what you're saying. I don't know if I'm saying they limited, although I do think that's fair to interpret that way. But what I'm saying is the only thing that they did limit to in terms of saying what caused what was with regard to the roof. And so whether the ceiling tile was one ceiling tile or whether it was all the ceiling tiles doesn't matter. I'm not, I can't speculate as to what caused that unless they say, here's what caused it. That's on the archdiocese to put that in there. I think I have that argument. Both of us were asking, is there any relevance to the fact you've got an installer plus the membrane manufacturer? Is that any aspect of your argument here? Can you repeat that please? Is it Vima was the installer? Yes, that's correct. I think Judge Wilson and I were both asking whether that's relevant to your arguments in that there was an installer and the allegations could pertain more to the installer's work than it does to the roof membrane, or is that not something you're pressing? I like that argument. I don't think I can advance that argument. And the reason why is because if they do, I'm not trying to be disrespectful, but if someone does a less than stellar job of drafting a complaint and a pleading and doesn't say exactly what goes to whom, then if there's something there that's covered, even if there's multiple defendants, if there's something there and they haven't specifically, because I know how plain it's like to say defendants and not have to be specific, and then you have to file some type of motion to say, well, let's be a little more specific. I guess my question was inching towards that I think does align with your brief, is that the unanswered contractual liability exclusion argument, that there'd be a separate basis for you to prevail. Potentially yes. But the district court didn't reach it, so you agree with opposing counsel we wouldn't reach that in the first instance? No, not in the first instance, not on this issue. But the point I'm trying to get across, and if I haven't done it, feel free to throw something at me, but not just the cause development in here as well, but also in addition to that, that is an argument, in addition to that also, they've got to have said that here's something that we're pleading that we're seeking damages, not just that we've pointed out factually that something happened, but we're seeking damages. And so their response to that is, well, we've said in excess, and my response to that is, what is the in excess? You can throw any number out there, but that doesn't mean that you've shown that you're seeking damages, that well, it only makes sense. We're not in the making sense game when we're in the eight corners analysis, and I don't mean to be flippant or disrespectful. Counsel, let me add, this is kind of knocking around in my head, and that may be dangerous, but we're not construing a complaint like we would construe contractual terms. Correct. I mean, and I think it's worth recognizing that CPLAS doesn't have any control over what the archdiocese pled and how they crafted their complaint, right? We're talking about notice pleading. So what kind of deference are we to give, or what kind of inferences are we to read in the complaint? I mean, it's one thing to pick apart the policy terms and the language that the parties agreed to in that coverage contract.  I think maybe the point that we take away from the building specialties case, and there's a number of cases that talk about this causative element that I'm referring to. But in that case, when they say it's not enough that the party suing the insured has incurred property damage, I have no doubt that that court was aware of that there's a standard that applies when you're looking at an insurance policy as to whether there's coverage, you know, that you resolve doubts in favor of the insured and that type of thing. But the point I think they're making here is you can't connect the dots for them. Well, but I guess if I'm a defense lawyer and I get this complaint, I mean, I'm kind of going to assume that they're going after the property damage, the roof damage. I mean, that's what in excess means to me. And by the way, I like them tolerably well in the 80s. I don't know about how much it is in this case. But you see what I'm saying? I mean, if I get this as, am I noticed? And is that enough that they're going after more than just the damage to the roof that's $5 million? I hate to disagree with you, but it's not enough. And they weren't any good after their first album. But that notwithstanding, the reason why it's not enough is because like in building specialties, you could say there's damage and you could say, well, we can assume from the tenor and the context and the general discussion of what's going on in the pleading, but that's not what you do. And I have not found any court that has said anything like that. I have not found any court that said, you can look to the language in excess or... Well, not just in excess, but you see my point that we talk about notice pleading and that's sort of a bedrock thing. Again, I'm not sure that rule 12 applies here at all, but I can't help thinking that inferences are given to the pleader of the complaint. Again, it's not CPLAST, it's the diocese. But do you see my point? How much scrutiny are we to give this complaint? How strictly are we to read it? I see that I'm out of time. Can I just, can I briefly respond to that question? Yeah. Thank you. You still have to apply the standard that's relevant here. My point is, is that I don't think that that standard comes into play here in terms of determining whether or not that they have, for instance, have they alleged and are seeking damages that you can't assume anything on their behalf, that you can't assume that there's a connection between the roof that's leaking, that they claim is leaking and any other damage that they're claiming, whether it's the walls or the tiles or the doorknobs or anything else, that assumption doesn't come into play. They have to say this caused that and that's not hard to do. Thank you, counsel. Thank you very much. Appreciate your time this morning. By the way, Steve's such a nice guy. He's taking me out to lunch afterwards. So is that what we said? That's exactly what we said. Well, it is, I'll just interrupt for your time. You could wait. I do enjoy it when co-counsel oppose our close friends and compliment each other professionally. We just started today. Okay, go ahead. Counsel said a few times, our petition, meaning CPLAS petition. No, no, no, no, not CPLAS petition. This complaint was written by the archdiocese and therefore what is the standard? Judge Wilson, you pointed out, what's the standard? You read it liberally. That is the duty to defend. You have to, all the cases, right? If it potentially includes a duty to defend, as I said before, a green tree. There's coverage with a factual allegations that supportive action that was not even specifically pled. You look at the complaint, there are allegations of tile, of tile sealing, of sealing tile damage. There is no evidence that they weren't seeking that. All the cases say all doubts regarding the duty to defend should be liberally construed towards the duty to defend. Again, we didn't draft this. Maybe we would have drafted better. Maybe we wouldn't have. Paragraph 21 on March 24th, 2017 at the scheduled site, the leaks and damage created thereby with the sole responsibility of CPLAS under the CPLAS guarantee. Water, 15 observed water damage in the ceiling. We know that just because you know how limited rebuttal time is, maybe speak to paragraph 43 and this connective tissue argument and then speak again just quickly to building specialties because he highlighted that as his best authority. 43, Your Honor, says as a result of CPLAS material breaches of the guarantee, the planter will be forced to replace the roof. Period. Nothing else. Okay. That's part of the complaint. Lamar says that you look at currents that causes property damage. Doesn't matter if it's guaranteed. I think they say warranted risk that causes, I guess I'm just asking, where would you, what paragraph would you point us to as to that causative argument? Um, I don't know if you need the causative argument. I think that you look at this again, as I mentioned before, the basic thrust, the basic thrust of this is damage. Certainly, certainly the archdiocese wasn't saying, oh, we only want the roof. Forget about the ceilings. Oh, sorry. I keep on saying the ceiling, the ceiling tiles. Certainly wasn't. Building specialties, we provided the underlying complaint. You can hold it up to the light. There is no allegation there of property damage other than to the work. It doesn't exist. That's why they lost because they needed to go back and put in an affidavit. And that's not eight corners. We have allegations, building specialties. Again, sometimes you're at the mercy of the underlying plaintiff. And in that case, the underlying plaintiff didn't plead it at all. Didn't plead anything that rhymed with floor damage and therefore they were stuck. But that's not the case here at all. Thank you, Your Honor. One of my law clerks said, Justice Sotomayor might've gone to this school. Did either of you two know that? No. Thank you. Case is submitted.